ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Military Aircraft Parts | ) ASBCA No. 60336 |
| | ) |
| Under Contract Nos. SPM4A7-11-M-J567 | ) |
| SPM4A7-11-M-P870 | ) |
| SPM4A7-12-M-0831 | ) |

APPEARANCE FOR THE APPELLANT:        Mr. Robert E. Marin
                                     President

APPEARANCES FOR THE GOVERNMENT:      Daniel K. Poling, Esq.
                                      DLA Chief Trial Attorney
                                     Edward R. Murray, Esq.
                                     Jason D. Morgan, Esq.
                                      Trial Attorneys
                                      DLA Aviation
                                      Richmond, VA

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

The government contracted with appellant, Military Aircraft Parts (MAP), for aircraft frames, and later terminated the contract and canceled two purchase orders that it had issued for more frames. MAP alleges that the termination of the contract and the cancelation of the purchase orders are breaches. MAP elected to proceed under Board Rule 12.2,[1] and the parties have waived an oral hearing. The government questioned our jurisdiction, and we asked the parties to address our jurisdiction further. We dismiss the appeal, in part, for lack of jurisdiction, and deny the remainder of the appeal on the merits.

The appeal is governed by the Contract Disputes Act, 41 U.S.C. §§ 7101-7109. On 28 February 2011, the Defense Logistics Agency (government) awarded to MAP a contract (Contract J567) for 24 aircraft frames to be delivered by 22 June 2012, for $62,880 (R4, tab A1 at 1, 3). Contract J567 required the delivery of "[First Article Testing (FAT)] Report/Delivery of Fit Check Sample" within 270 days after receipt of order; that is, by 25 November 2011 (R4, tab A1 at 2).

---

[1] A decision under Board Rule 12.2 shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

On 3 June 2011, the government awarded to MAP a purchase order (PO P870) for 30 additional frames to be delivered by 24 December 2012, for $51,050 (R4, tab B1 at 1). PO P870 required MAP to deliver a first article test report and a government fit article within 360 days after receipt of order; that is, by 28 May 2012 (R4, tab B1 at 2).

On 10 November 2011, the government awarded to MAP a second purchase order (PO 0831) for another 30 frames, to be delivered by 4 December 2012, for $50,950 (R4, tab C1 at 1). PO 0831 required MAP to conduct first article testing and submit a first article test within 180 days after receipt of order; that is, by 9 May 2012 (R4, tab C1 at 2). Each purchase order provided that MAP could request a waiver of its first article requirements if the first article for Contract J567 were approved (R4, tab B1 at 2, tab C1 at 2). MAP was not required to sign either purchase order, and signed neither (*id.*).

MAP did not deliver a first article until September 2012, for testing pursuant to Contract J567 (R4, tab A3; app. br. at 3, ¶ 6). In December 2012, the government disapproved that first article (R4, tab A7 at 2). On 15 January 2013, MAP indicated to the government that it intended to submit an aircraft frame for "First Article Fit Check" for PO P870 (notice of appeal (NOA), ex. E, claim), and was informed that it would have to submit a first article test report for that purchase order (gov't br., ex. 12, ¶¶ 2, 3). There is no evidence that MAP submitted a first article test report for PO P870; however, according to MAP, a first article test report for PO P870 "could be completed in under 30 minutes" (app. reply at 3).

On 30 January 2013, the government's industrial specialist requested that MAP expedite PO 0831 "to cover current backorder" (NOA, ex. G, claim). MAP responded the same day, stating that a first article was "in stock ready for inspection/fit check" (*id.* at 1).

On 18 March 2013, the contracting officer terminated Contract J567 for default, for failure to meet delivery dates (R4, tab A14). MAP received the termination decision on 2 April 2013 (R4, tab A14 at 4). On 14 May 2013, the contracting officer canceled PO P870, because MAP had not met the 24 December 2012 delivery date (R4, tab B2 at 1, 2). Also on 14 May 2013, the contracting officer canceled PO 0831, because MAP had not met the 4 December 2012 delivery date (R4, tab C2 at 1, 2).

MAP did not appeal to the Board from the termination of Contract J567 within 90 days of receiving the termination decision. In June 2015, MAP presented to the contracting officer a claim for $26,219, alleging breaches of Contract J567, PO P870, and PO 0831 (gov't br., ex. 11 at 1). On 26 August 2015, the contracting officer responded to the claim, refusing to revisit the decision terminating Contract J567, and denying the claims regarding PO P870 and PO 0831 (gov't br., ex. 15). MAP filed its appeal on 23 November 2015.

MAP contends that the government should have approved the September 2012 first article, and, therefore, that the termination of Contract J567 was a breach (app. br. at 7, ¶ 2, at 13). The government says that contention is untimely. Reviewing whether the termination of Contract J567 was a breach would be reviewing the decision to terminate the contract; however, because MAP did not appeal from the termination decision within 90 days of receiving it on 2 April 2013, the Board may not review that decision. *See* 41 U.S.C. §§ 7103(g), 7104(a). Although MAP, citing *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014) (CDA six-year statute of limitations not jurisdictional), contends that the 90-day appeals period is not jurisdictional, and that we adopt here a "good cause" exception (app. resp. at 2, 4), we reiterated only last year that the 90-day appeals period cannot be waived. *TTF, LLC*, ASBCA No. 59511 *et al.*, 15-1 BCA ¶ 35,883 at 175,434. Therefore, we do not possess jurisdiction to entertain MAP's claim that in terminating Contract J567, the government breached, and dismiss that part of the appeal for lack of jurisdiction.

By contrast, MAP's challenges to the cancelations of PO P870 and PO 0831 are timely. A cancelation of a purchase order is not a government claim; consequently, there must be a claim submitted to the contracting officer and a contracting officer's final decision upon that claim (or a deemed denial of the claim) in order for the Board to possess jurisdiction to entertain a challenge to the cancelation. *See Connectec Company, Inc.*, ASBCA No. 57546, 11-2 BCA ¶ 34,797 at 171,258-59. Each claim by a contractor against the Federal Government relating to a contract must be submitted within six years after the accrual of the claim. 41 U.S.C. § 7103(a)(4)(A). Here, MAP challenged the 2013 cancelations in its 2015 claim to the contracting officer, and filed its appeal from the final decision denying that challenge within 90 days of receiving the denial of that claim. Accordingly, the Board possesses jurisdiction to entertain MAP's challenges to the cancelations of PO P870 and PO 0831.

We deny MAP's challenges to those cancelations. PO P870 and PO 0831 were unilateral purchase orders: not contracts, but offers to create option contracts. *See DODS, Inc.*, ASBCA No. 57817, 12-2 BCA ¶ 35,083 at 172,290. A purchase order lapses when a delivery date arrives without delivery, without the need for any action on the part of the government. *See id.* at 172,290; *Alsace Industrial, Inc.*, ASBCA No. 51708, 99-1 BCA ¶ 30,220 at 149,508-09. Once a purchase order lapses, reinstatement is a matter of contracting officer discretion. *Alsace*, 99-1 BCA ¶ 30,220 at 149,508-09.

PO P870 and PO 0831 required MAP to deliver first article items by May 2012 delivery dates. MAP did not do so. Indeed, MAP did not deliver any first article item until September 2012, when it did so for Contract J567. Because MAP did not deliver the first article items required by PO P870 and PO 0831 by those purchase orders' delivery dates, those purchase orders lapsed in May 2012. Although MAP attempted in January 2013 to submit a first article for testing for PO P870, there is no evidence that it ever submitted a

first article test report for that purchase order, as PO P870 required, even though MAP admits that it could have completed such a report within 30 minutes. And although a government industrial specialist asked MAP in January 2013 to expedite PO 0831, there is no evidence that a contracting officer ever reinstated PO 0831 or PO P870. Therefore, we deny the part of the appeal related to the cancelations of those purchase orders.

Dated: 25 April 2016

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60336, Appeal of Military Aircraft Parts, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

4